The next matter, number 24-1787 Victor M. Hernandez et al. versus Pilgrim's Pride Company et al. At this time, would counsel for the appellants please introduce themselves on the record to begin. Good morning, your honor. Morning. Before you is attorney Eric Morales Perez, attorney for appellants in this case. I would like, if possible, a rebuttal, a brief time for a rebuttal, if needed. You can have two minutes. Thank you, sir. Two minutes is enough at my age. Your honor, this appeal is reviewing a challenge of grant of summary judgment by the honorable district court in favor of... You don't have that much time, but we know the case pretty well, so you can go right to your legal argument. I'll get to the point immediately, sir. Our central submission is that the district court departed from the principles of local rule 56 by disregarding the supported disputes and effectively crediting defendant's narrative. The district court ignored completely our disputed facts that we submitted to the court. Defendant presented 124 statements of undisputed material facts. We agreed with 79 of them, and we disputed 44. Now, the district court did not take into consideration the exhibits that were presented to the court in opposition to the motion for summary judgment. It did not consider the sworn statement of my client. It did not consider the evaluations of my client for the years 2017, 2018, 2019. It did not consider the depositions that were presented of Mr. Clay Matthews, which manifested in said deposition that he approved of the termination of Mr. Hernandez. Counsel, if we just for the moment agree with you that that evidence should have been considered more robustly by the district court, could you focus on what about the key evidence that you've just mentioned do you think creates a genuine dispute of material fact and what seems to be the key issue, which is, was there pretext here? Yes, there was a pretext. So how do you think you created a genuine dispute on pretext? Let me jump to August 10th, 2020. This is the main issue that we have before the court. My client filed a grievance against Mr. Clay Matthews, and it addressed the same to Mrs. Lisa Burdick, who was the human resources for the USA, and to Mr. Pat Allen. Now, they did not do anything concerning that complaint. In the deposition, Mr. Pat Allen stated that he did not meet with Mr. Hernandez to discuss the grievance that he had filed. He admitted that he did not travel to Puerto Rico to discuss the matter. He admitted that he did not carry out a hearing to determine the grievance filed by Mr. Hernandez. Why does that bear on the pretextual? Because the basis, if I understood it, the basis for the termination was the contention about the bad behavior of your client. So what is the relevance of what you're saying now to the relevant question, which is, was the asserted ground for the termination pretextual, which had to do with the bad conduct of your client? The relevance of this information, Your Honor, is that he was terminated on October 19th. That is 69 days after he filed the grievance. In the meantime, contemporary with that grievance, the defendants allege that Mr. Hernandez was incurring an aggressive behavior during X amount of time. And was the first allegation of that after the grievance was filed? I'm sorry, say again? Was the first allegation of his aggressive conduct made after the grievance was filed? That's correct. There had been no allegation of his aggressive conduct? There is no evidence that Mr. Hernandez incurred an aggressive behavior. It only surfaces in October of 2020. And is that after the grievance was filed? After the grievance was filed. Okay, and? So you have close in time, right? You have 69 days, I think. What else do you have? I have the fact that the evaluations were not considered at all. There's no mentioning of aggressive behavior. He has excellent, excellent evaluations. Counselor, wasn't he actually, wasn't your client, he was placed on a PIP, a performance improvement plan? You're going to have to go to the, you're going to have to be behind the microphone. Yes, I need to. I'm sorry, I'll try to speak louder. I suffer from OAS, old age syndrome. It's okay, I'll speak extra loudly. My understanding of the record was that your client had been placed on a PIP, and that there had been previous counseling from his supervisor about your client reacting in an emotional way to certain situations at the workplace. So can you respond to that evidence, which I think predated by several years? Yes, that was in 2017, Your Honor. And he did perform, he was sent on some type of probation, and he passed with flying colors, and he continued. But there was an antagonism with Mr. Matthews, which created an environment that Mr. Hernandez thought that it was harassment and discriminatory. But it all comes down to the letter of August 10, 2020. That's when everything basically started. And what we're saying is that this so-called aggressive behavior is a pretext, because it surfaced in October, not before. And you're distinguishing then between the conduct that caused the PIP, and the conduct that's being identified as the basis for the termination? It is distinguishable because the PIP had nothing to do with what Mr. Hernandez brought in August 2020. No, I'm not. I know that. What I'm saying is, one way of reading the record is the aggressive, the concerning behavior by your client was a repeated theme. It started before, it was raised after. You seem to be telling us that the nature of the concerns that were raised that caused him to be put on a PIP, related to behavior that's sufficiently distinguishable from the behavior that he was alleged to have engaged in post-October, that a juror could find that new set of allegations was pretextual because it didn't surface until after the grievance was filed. Correct. The PIP has nothing to do with it. Well, it's not the PIP, it's the conduct that generated the PIP. Yeah, but there's no evidence of conduct. There's nothing in the evidence. There's nothing there. Counsel, I understand your argument that you think the conduct was different. I understand that. But what are we to make of the fact that the summary judgment record does contain statements from multiple other employees, made statements to HR that your client did act aggressively towards them in that time period. So what are we to make of the fact that those are in the record, that multiple people are saying that was their experience in the workplace? It happened in October, 2020, when the so-called sham investigation was carried out. Never before did these persons admit it in the depositions. They brought the fact that Hernandez had... What's the record show about what led to those statements being made? Those are generated in an investigation that the company was conducting into his behavior? There was no investigation. It's a deposition. At depositions? At depositions. There was no formal investigation. Not even concerning the... Yeah, but I guess what, but I mean this to Judge Rickleman's point, the record shows that consistent with the company's conclusion that your client engaged in aggressive behavior. There are people saying during this time frame he did engage in aggressive behavior. In October. Yeah, but so I don't see why that, that means once he files a grievance he's free to act as outrageously as he wants? Okay, so then, so there's got to be some more of a basis for a juror to think that these consistent complaints unrebutted of aggressive behavior by him during that period of time were somehow generated by the grievance rather than just they occurred during that time. What's that evidence? Your Honor, that's not the case. Yeah. They, these persons filed a complaint for aggressive behavior prior, prior to the August trial against Mr. Clay Matthews. Information came about through discovery when I took the depositions. Never before I... You say that this man was incurring an aggressive behavior. All of a sudden, all of a sudden we have an aggressive person who happens to be suing the entity which employs these other persons. Thank you. Thank you, sir. Thank you, counsel. At this time would counsel for the appellee please introduce themselves on the record to begin. Counsel. Good morning, may it please the court. My name is Carlos Colón Machargo and along with Maria Victoria Munda Pascual and Alex Merritt, we represent appellees in this case. So, contrary to what counsel for appellant stated, the court in this case follow Local Rule 56 the way it was written and the way it should be enforced. The court has no requirement to ferret through the record to find what issues are contested. It is the non-moving party's duty to go through the facts that we propose and show how those facts are contested by the record or to provide additional facts. And in this case, the court found that the evidence presented was not relevant to what the facts proposed. And in fact, the failure to follow the local rule prompted the court to disregard any and all facts for failure from a procedural standpoint. As far as the merits of the case are, we were able to present evidence that the real reason, non-discriminatory reason for the termination was indeed the conduct of the plaintiff. That it was raised by the HR manager in Puerto Rico after there was a meeting in which there was a lie about personnel being terminated and that prompted her to contact HR and file a formal claim. There were several peers, the subordinates of the plaintiff that were part of that investigation that rendered statements and verified that the conduct indeed has become aggressive. There has been a prior in August 10th of 2020, there was a racial complaint that was filed by plaintiff that was fully investigated by the company. And it was corroborated by five witnesses. The complaint was racial in nature and the company investigated based on race and national origin. And the complaint was not only plaintiff, but his subordinates were subject to national origin. Let me just, if I'm following your opponent's account of what's happening, can you tell me what's wrong with it? Your client, the plaintiff files the grievance against Matthews on what date? In August 10th of 2020. Okay. The ultimate termination occurs 69 days later. That is correct. And the reason given is the harassing behavior of the plaintiff. Yes. Okay. When is the first time that there is a complaint registered about harassing behavior by any employee at the company? If we put the PIP aside, because it is, I mean, maybe this is wrong, but the contention is that he has emotional reactions, which is arguably different than harassment, which was the ground given. So what is the first time in which there is an allegation made by an employee at the company of Hernandez engaging in harassment? It was in October of 2020 after there was a call where a plaintiff lied about the termination of some employees due to safety in a call that were several members of his staff. HR contacted corporate headquarters. And just tell me how that, what the record shows on that score. So there's a phone call involving Hernandez and other employees? No, the head of HR in Puerto Rico. There's a call, yes, involving several things. They had weekly calls. And during that call, Hernandez misrepresented that some employee had been terminated due to safety reasons, when in fact that was not true. So the head of HR, who was made part of that lie, didn't correct him on that call. She felt compelled, like, this is getting out of control. He continues to have this vendetta against Matthews. So she called HR and said, you need to investigate this. This is getting out of control. And then, like, HR comes, assigns a different person that investigated the first complaint about Nazareth to investigate and take the statement of four of the plaintiff's subordinates. And he corroborates that indeed he has— So on your account, October is the precipitating event for these harassment claims to surface because of reasons that have nothing to do with the grievance. There's just an intervening event, which is the phone call in which HR then— Did it indicate that HR was in contact with Clay Matthews following that call? There was not. Clay Matthews was not part of that investigation. He was informed of the decision to terminate before it was implemented. But HR even assigned a different person. It assigned Bobby Wright. Pat Allen was the person who investigated the first one, the first complaint about national origin. So they were very careful separating the investigations, not involving Matthews because he had been, like, the subject of the prior investigation. And then they concluded that, like, his behavior warranted termination. Counsel, let me ask you this because it does seem to escalate quite quickly that the plaintiff is fired. So I think you just said the complaint by the HR employee in Puerto Rico is made around October 10th. And then isn't he fired on October 19th?  So in nine days, they conduct an investigation and terminate somebody who's worked there for multiple years without, I think, ever meeting with him about the allegations, from what I understand. And given that it is so close in time to him making a complaint about a supervisor, why isn't that enough to raise a tribal issue about pre-tax? It doesn't seem consistent with how the company was handling the Matthews investigation, for example, that it could go in nine days from investigation to termination. Yeah, no, the interview, like, the interviews involved the head of finance, the head of sales, the head of HR, and they corroborated his erratic behavior. I understand, but does the record explain, you obviously know the record much better than we do, does the record explain why the company would have made a, would have done an investigation and made a decision to terminate someone in nine days? Yeah, because they consider the conduct so egregious that he was, he had like, he has, he had no ability to leave going forward. And the heads of the department that run the company here, they're all aligned that his behavior was so egregious that there was no other choice but to terminate his employment. But where would you suggest that we look in the record to understand the basis for making that decision within nine days? The statements of that were given by those four employees. But that doesn't reflect the decision-making of the company. That's just the, his colleagues saying they've experienced erratic behavior. Is there anything in the record that explains why the company decided to terminate somebody? No, not on the record. There's no, there is like in the brief, like it explains the thought process behind, but it was due to that conduct and his, the fact that they consider that he has lost his ability to leave. No, but is that, as you know, explanation by counsel is not record evidence. So I'm just wondering if you can point us to something actually in the summary judgment record that explains the company's thinking. And your answer is no, you can't. Yeah, I mean, there were depositions in which the decision-making process was explained as to who made the decision. And it was a collective decision involving HR. Which deposition do you think best explains the decision-making process? Lisa Burdick, Bill Lanners' deposition, and there is like facts of findings that we proposed that were uncontested that go through that process. So there is like evidence on the record in that regarding the uncontested facts. And also Pat Allen, those three people were the decision-makers. Pat Allen was the head of HR. Lisa Burdick was the head of like her, his boss who was a global head of HR. I take it plaintiff didn't, there's no comparator that's been identified as part of their pretext showing that somebody with similar conduct was kept on. No, there was not. There was no, there was no rebuttal during the process. And as a matter of fact, plaintiff was replaced by a Puerto Rican, the head of sales, who was also Puerto Rican descent. So that sort of disproves like national origin motive. Thank you.  Thank you, counsel. At this time, counsel for the appellant, please reintroduce yourself. Very briefly, your honor. One, the pretext, aggressive behavior, nothing in the record, nothing at all in the record as far as evaluations is concerned, nothing stating. The only time aggressive behavior came about is in the depositions and apparently occurred in the month of October, 69 something days after he filed the grievance. Just on your account of things, it's, I mean, just, I don't, is there anything in the record that undermines the timeline that's being given that there was a precipitating event seemingly independent of the filing of the grievance, which was he saying on a call something that was not true that precipitated HR to then get involved and find out what's going on with him. I mean, that is a, if you're going to make a pretext argument, don't you have to somehow cast doubt on that timeline? Well, one thing is to have differences of opinion as to marketing operations and so forth. Another thing is to talk about harassment. Yeah, I'm just saying that that comes up, not out of the blue, it doesn't come up right after the filing, it doesn't come up in the, all of August there's no reference to it, all of September. It comes up in connection with, on the timeline establishing the record not disputed, a separate event precipitated by a comment that you don't deny your client made about the termination for lack of safety that then generates inquiries into what's going on. So why isn't that just a independent reason for things coming up in October that you'd have to show actually that's not why they were saying? The way I look at it, Your Honor, he files a complaint against Mr. Matthews. During the time frame up to October, nothing happens, there's no investigation carried out, nothing, nobody does anything. All of a sudden, they come to Puerto Rico or they call Puerto Rico, they do nothing, they ask him for the keys, get out of the office and goodbye, no letter of termination, no nothing. There's nothing, it's related. The fact that he filed a complaint against Matthews and Matthews approved that he be terminated. The man that supposedly that he's, my client is saying, by the way, he is harassing, discriminating and so forth, he approves his termination. Not an independent individual, he approves. And it's all related. We cannot look at it in a vacuum. Thank you. Thank you, sir. Permission to withdraw from the... Thank you, counsel. That concludes argument in this case. All rise.